FILED'10 APR 2 1453USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

MAURICE MONTGOMERY,

Plaintiff,

v.

AGC-INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 701 PENSION TRUST FUND, DEFINED BENEFIT PLAN,

Defendant.

Civil No. 08-3129-CL

ORDER

CLARKE, Magistrate Judge:

Defendant removed this action from state court on the ground that plaintiff asserted claims against it related to his employee benefit plan which are governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 et seq. This court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). The parties have executed written consent for entry of judgment by a magistrate judge (#6). 28 U.S.C. § 636(c). Before the court is defendant's motion for judgment as a matter of law (#30) which plaintiff opposes. For the reasons explained below, defendant's motion is granted.

**STANDARDS**

A denial of benefits by an ERISA plan administrator is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). The grant of discretion must be unambiguous. Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006) (en banc) (citing Kearney v. Standard Ins. Co., 175 F.3d 1084 (9th Cir. 1999) (en banc)).

Where the deferential abuse of discretion standard is utilized and the administrator is operating under a conflict of interest, "that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" Firestone, 489 U.S. at 115; Metro. Life Ins. Co. v. Glenn, ___ U.S. ___, 128 S. Ct. 2343, 2357 (2008). In evaluating a conflict, the court may consider evidence outside the administrative record, applying the traditional rules of summary judgment. Abatie, 458 F.3d at 970; Nolan v. Heald College, 551 F.3d 1148, 1150, 1153-55 (9th Cir. 2009).

Like a conflict of interest, a procedural irregularity in the processing of an ERISA claim should be weighed by the court in determining whether an administrator's decision was an abuse of discretion. Abatie, 458 F.3d at 972 (and cases cited).

In rare instances, where an administrator's actions fall so far outside the strictures of ERISA so that it cannot be said that the administrator exercised discretion, no deference is warranted, and the administrator's decision will be reviewed de novo. Id. at 971-73 (and cases cited).

Under the abuse of discretion standard, an ERISA plan administrator "abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan, 410 F.3d 1173, 1178 (9th Cir. 2005). The abuse of discretion standard "does not permit the overturning of a decision where there is substantial evidence to support the decision, that is, where there is 'relevant evidence [that] reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence.'" Snow v. Standard Ins. Co., 87 F.3d 327, 332 (9th Cir. 1996), overruled on other grounds by Kearney v. Standard Ins. Co., 175 F.3d 1084 (9th Cir. 1999) (quoting Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir. 1994)). "In the ERISA context, even decisions directly contrary to evidence in the record do not necessarily amount to an abuse of discretion." Boyd, 410 F.3d at 1178 (quoting Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1472-73 (9th Cir. 1993), abrogated on another ground by Abatie, 458 F.3d 955).

## FACTUAL BACKGROUND

A review of the record reveals the following[1]:

In June 1993, plaintiff Maurice Montgomery elected his retirement benefits as the 2/3

[1] Attached to the Declaration of Cornelia Taylor in Support of Defendant's Motion Regarding Abuse of Discretion Standard of Review and Discovery Limited to Administrative Record (#18) are the AGC-International Union of Operating Engineers Local 701 Pension Trust Fund (the Plan) (Ex. 1) and the administrative record (Ex. 2). The record also includes Defendant's Clarification in Response to Minute Order Dated May 5, 2009 (Docket No. 19) (#21) including the attached exhibit.

Spouse Option Annuity, or the Survivorship 2/3 form of payment, and designated Cecilia Montgomery as his beneficiary for his retirement benefits. Ex. 2 at 4-8; see Ex. 2 at 1. Montgomery retired on August 1, 1993, and his benefits commenced on August 1, 1993. Ex. 2 at 4.

Section 6.07 of the Plan, as amended, entitled "Application for Retirement Income; Election of Form of Payment," in effect at the time Montgomery retired, allowed a participant to elect or revise a Form of Payment at any time during the election period, which ended on the date that benefits commenced. Ex. 1 at 95-96. Section 6.07 further provided that a spouse is "the legal spouse of the Participant as of the date benefit payments commence," and that "[i]n the event the spouse of the Participant predeceases the Participant or they are divorced after his retirement, and he remarries, such subsequent spouse shall not be eligible for any benefits under this Plan." Ex. 1 at 32.

In a letter to the Plan dated January 7, 2008, Montgomery sought to "change the beneficiary of my pension from Cecilia Montgomery, my former wife, to Judith K. Montgomery, my current wife." Ex. 2 at 92. Montgomery provided a copy of a "General Judgment of Dissolution of Marriage; and Money Award" dated September 12, 2007, that awarded him in the Personal Property Distribution paragraph, "his retirement benefits, pension plan, . . . held by husband's current or past employer, free of any interest in the wife." Ex. 2 at 93-100.

In an April 18, 2008, decision on Montgomery's benefit claim, the Plan's Board of Trustees Review Committee (the Review Committee) allowed Montgomery to assign his death

benefit to Judith Montgomery, but denied his request to substitute her for Cecilia Montgomery for the survivor annuity benefits.[2] Ex. 2 at 9, 11-13. The decision quotes the personal property distribution paragraph of Montgomery's divorce decree, supra. The Review Committee based its decision to deny Montgomery's substitution request on the Plan provisions regarding the election period, the definition of a spouse, and the effect of a divorce and remarriage after retirement. Ex. 2 at 12; see provisions supra. The Review Committee determined that under the Plan provisions, a retiree's benefit option election is "locked in" when the elected benefits start so that the Plan's retirement payment liabilities can be reasonably estimated and appropriately funded. Ex. 2 at 12; see Ex. 1 at 31-32.

In the decision and letter accompanying the decision, the Review Committee provided Montgomery an opportunity to appeal its decision. Ex. 2 at 9-10, 12. Montgomery submitted a letter dated May 14, 2008, appealing the Review Committee's decision, and enclosing a Beneficiary Designation Form designating Judith Montgomery as the recipient of his death benefit and proof of their marriage on December 5, 2007. Ex. 2 at 60-62.

At an October 13, 2008, meeting of the Review Committee, it denied Montgomery's request to substitute his new spouse, Judith K. Montgomery, as the joint annuitant for his

---

2 In its decision, the Review Committee cited certain sections of the "January 1, 1993, Plan" as the plan in effect at Montgomery's retirement date. Defendant notes in its briefing a difference in the sections cited by the Review Committee and maintains that the Plan attached to the Declaration of Cornelia Taylor in Support of Defendant's Motion Regarding Abuse of Discretion Standard of Review and Discovery Limited to Administrative Record (#18) is the correct plan. See #21 Defendant's Clarification at 2; #18 Taylor Decl. ¶¶ 2, 4. While there are some differences in the wording of section 6.07 (cited as sections 6.6 and 6.7 by the Review Committee), there does not appear to be any substantive difference which affects the court's resolution of this matter.

pension benefits. The letter from the Plan accompanying the denial states: "The denial was based on the fact that the Trust Office has been in contact with your spouse Cecilia A. Montgomery, who has provided our office with proof of her being alive." Ex. 2 at 14-15.

**DISCUSSION**

Applicable standard of review

The court must first determine whether the Plan gives the plan administrator discretionary authority to determine eligibility and construe the terms of the Plan or whether the default de novo standard applies. Defendant relies on section 13.01 of the Plan as establishing an abuse of discretion standard. Section 13.01 of the Plan, entitled Administrator, provides in pertinent part that:

> the Trustees shall have the exclusive right to construe the provisions of the Plan and to determine any and all questions arising thereunder or in connection with the administration thereof, including the right to remedy possible ambiguities, inconsistencies, or omissions and any such construction or determination by the Trustees made in good faith shall be conclusive on all persons affected thereby provided that in any such construction or determination, the Trustees shall not discriminate in favor of any class of Employees.

Ex. 1 at 63. This Plan provision gives the administrator the discretionary authority to construe the terms of the Plan warranting deferential review. See McDaniel v. Chevron Corp., 203 F.3d 1099, 1107 (9th Cir. 2000).

Plaintiff asserts that a de novo standard should apply because of certain procedural irregularities. Other than challenging the administrator's decision to deny changing the beneficiary, it appears that plaintiff contends that the administrator failed to address within ERISA time limits whether his divorce decree was a qualified domestic relations order; and

failed or refused to comply within 30 days to a request for information. Neither of these purported procedural irregularities are so far outside the strictures of ERISA that it can be said that the administrator did not exercise discretion in the decision making.

Defendant represents that the Plan administrator does not both fund and administer the Plan, and no conflict is apparent in the record.

In the circumstances of this case, defendant made the right decision under the Plan and ERISA law as a matter of law, whether an abuse of discretion standard or a de novo standard is used.

Review of decision

Plaintiff claims that he should be able to change the beneficiary of his pension fund to his present spouse and argues that he has done that by means of his divorce decree or that he be allowed to obtain a qualified domestic relations order (QDRO) showing percentages to his former spouse and his present spouse.

In the April 2008 decision at issue here, the Review Committee recounted that, during the Plan's election period, plaintiff chose his former spouse, Cecilia Montgomery, as his beneficiary for his retirement benefits, and that he retired on August 1, 1993, the same date that his retirement benefits started. The Review Committee acknowledged plaintiff's divorce decree obtained in state court, quoting the language that plaintiff "'was awarded his retirement benefits, pension plan, profit-sharing plan, deferred compensation plan, and/or stock option plan held by husband's current or past employer, free of any interest in the wife.'" Ex. 2 at 11. In denying

plaintiff's claim request to change his spouse beneficiary from Cecilia Montgomery, his spouse at retirement, to his current spouse, Judith Montgomery, the Review Committee relied on certain Plan provisions.[3] Section 6.07 of the Plan, as amended, allowed a participant to elect or revise a form of payment at any time during the election period; the election period ended on the date that benefits commenced. Ex. 1 at 95-96. The Plan provided that a spouse is "the legal spouse of the Participant as of the date benefit payments commence." Ex. 1 at 32. The Plan also provided that "[i]n the event the spouse of the Participant predeceases the Participant or they are divorced after his retirement, and he remarries, such subsequent spouse shall not be eligible for any benefits under this Plan." Ex. 1 at 32. After setting out these pertinent Plan provisions, the Review Committee explained:

> Hence, a retiree's benefit option election is "locked in" when his elected benefits start, and here that was August 1, 1993. The reason that "lock in" is provided in the Plan terms is so that the Plan's retirement payment liabilities can be reasonably estimated and appropriately funded. . . . It would be inconsistent with the determination of the amount payable to both Mr. Montgomery and his then spouse, Cecilia, under that payment option, to substitute a later spouse, who likely is not the same age as the spouse at retirement, and thereby has a different projected life expectancy.

Ex. 2 at 12.

The Review Committee's decision to deny plaintiff's request and its reasoning are supported by the applicable Plan provisions and the ERISA statutory scheme as interpreted by the Ninth Circuit. The question presented here was considered by the Ninth Circuit in Carmona v. Carmona, 544 F.3d 988 (9th Cir. 2008), based on facts similar to those in this case. In

---

[3] See footnote 2.

Carmona, the participant husband named his eighth wife as his survivor beneficiary and then retired and began collecting pension benefits under his pension plans. In a subsequent divorce decree entered in state court, he was granted his pensions as his sole and separate property and his wife her own pension plan as her sole and separate property. The husband then married his ninth wife and petitioned the state court for a QDRO revoking his eighth wife's designation as survivor beneficiary of his pension plans and substituting his ninth wife. After his death, the state court ordered the plan administrators to change the survivor beneficiary to the subsequent spouse. The Carmona court addressed the issue "whether or not a participant to an ERISA regulated Qualified Joint and Survivor Annuity ("QJSA") plan may change the surviving spouse beneficiary after the participant has retired and the annuity has become payable," and held that "QJSA surviving spouse benefits irrevocably vest in the participant's spouse at the time of the annuity start date–in this case the participant's retirement–and may not be reassigned to a subsequent spouse." Id. at 992-93 & n.2.

In reaching this conclusion, the Ninth Circuit distinguished between the two types of survivor annuity benefits: a qualified preretirement survivor annuity (QPSA) in which a vested participant dies before the annuity start date and the participant is survived by a spouse, see 29 U.S.C. § 1055(a)(2), and a qualified joint and survivor annuity (QJSA) in which the participant does not die before the annuity start date, see 29 U.S.C. § 1055(a)(1). Carmona, 544 F.3d at 998. QJSA benefits, which are at issue here, are "particular to the surviving spouse and may not be waived by the participant alone." Id. (citing Boggs v. Boggs, 520 U.S. 833, 842 (1997)); see Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan, ___ U.S. ___, 129 S. Ct. 865, 871

(2009). The participant and the spouse must waive the QJSA benefit in writing and may only do so during the election period which ends on the annuity start date, ordinarily the retirement date. Id. at 1002 (citing 29 U.S.C. § 1055(c)(1)-(2)(7)).

The Carmona court considered whether the QDRO, supra, might allow a state court to reassign QJSA survivor benefits since ERISA limits what a state court can order in its domestic relations orders. Carmona, 544 F.3d at 999; Hamilton v. Wash. State Plumbing & Pipefitting Indus. Pension Plan, 433 F.3d 1091, 1098-1100 (9th Cir. 2006). The QDRO is "'a subset of domestic relations orders that recognizes the right of an alternate payee to receive all or a portion of the benefits payable with respect to a participant under the plan.'"[4] Carmona, 544 F.3d at 999 (quoting Hamilton, 433 F.3d at 1096); see 29 U.S.C. § 1056(d)(3)(B)(i)(C)(D). The court determined that the retirement date "cuts off a putative alternate payee's right to obtain an enforceable QDRO" with regard to QJSA surviving spouse benefits. Carmona, 544 F.3d at 1000 (distinguishing Trs. of Dirs. Guild of Am.-Producer Pension Benefits Plan v. Tise, 234 F.3d 415 (9th Cir. 2000), as amended, 255 F.3d 661 (9th Cir. 2001) (QPSA benefits)).

The Carmona court found on the facts before it, that the state court's attempted transfer of interests in the eighth wife's surviving spouse benefits to the ninth wife was prohibited; the QDRO was unavailable to the participant husband because the surviving spouse benefits had already vested in the eighth wife at the time the husband retired. Id. at 1004-06.

---

[4] An alternate payee is defined as "any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant." 29 U.S.C. § 1056(d)(3)(K).

Because this case concerns a QJSA, the holding of Carmona is determinative of the outcome here. Like the husband participant in Carmona, plaintiff obtained a divorce decree which awards him his retirement benefits. As plaintiff apparently recognizes, the divorce decree does not qualify as a QDRO because plaintiff–the plan participant–is not an alternate payee. See footnote 4. However, even if he were to return to court and attempt to obtain a QDRO naming his current spouse, Judith Montgomery, as an alternate payee, the decree would not be enforceable under ERISA law as detailed above. On the date plaintiff retired and his retirement annuity started, the QJSA surviving spouse benefits irrevocably vested in his then spouse, Cecilia Montgomery, and these benefits cannot be reassigned even by means of a QDRO to a subsequent spouse. Carmona, 544 F.3d 988 (and cases cited). Once plaintiff retired, he was "locked into" a QJSA, which form of benefit cannot be changed even if his former spouse consents to the change. Id. at 1001 (citing Hopkins v. AT&T Global Info. Solutions Co., 105 F.3d 153, 157 (4th Cir. 1997)).

The record shows that defendant and the Review Committee may not have communicated clearly with plaintiff regarding his request to change the survivor annuity benefit. Plaintiff received a letter from the Plan pension coordinator dated October 2004 which may have led plaintiff to believe he could change the beneficiary designation by means of a QDRO (Ex. 2 at 120-21), and the Review Committee did not explain directly to plaintiff in its decision denying his request that the DRO he submitted was not a QDRO or that a QDRO would not change the outcome (Ex. 2 at 11-12). It also appears that the reason the Review Committee gave for denying plaintiff's appeal of its decision could be construed as a reason

different than, or additional to, that given in the April 2008 decision, although the Committee addressed an issue raised in that decision (Ex. 2 at 12-15). However, defendant's decisions denying plaintiff's request to change his spouse beneficiary to his current spouse was legally correct under the Plan terms and ERISA law, whether the discrepancies are considered as a factor under the abuse of discretion standard or the decision is reviewed de novo.

This outcome may be considered harsh. However, plaintiff was aware of the consequences of his benefit election. See Ex. 2 at 4-8. In Carmona, the Ninth Circuit noted that surviving spouse benefits were created in part "to protect non-participant spouses, particularly those that may not work outside the home and thus may not have independent retirement benefits." Carmona, 544 F.3d at 1003; see Boggs, 520 U.S. at 843. The court recognized that the vesting rule would not always protect a non-working spouse, but it would "in many situations involving a post-retirement attempt to transfer surviving spouse benefits." Carmona, 544 F.3d at 1003. The court stated:

> The finely tuned congressional scheme would not be served by state court DROs that attempt to divest a non-working spouse's interest in her surviving spouse benefits [and] congressional intent is not advanced by permitting a subsequent post-retirement spouse to collect benefits accrued during an economic partnership she or he was not a part of.

Id. & n.11. The court also found that the vesting rule promoted a principal goal underlying ERISA–that pension plans be uniform in their interpretation and simple in their application--noting that the participant's and surviving spouse's benefits are calculated at the time the benefits become payable. "Allowing participants to change surviving spouse beneficiaries after the participant has retired and already begun receiving benefit payments would make it difficult

for trustees to administer plans based on the actuarial value of both the participant and the surviving spouse." Id. at 1004; see Hopkins, 105 F.3d at 157 n.7.

Because defendant's decisions to deny plaintiff's request to change his spouse annuity benefits from his spouse at retirement to his current spouse were not an abuse of discretion and correct as a matter of law, defendant's motion for judgment is granted.

**ORDER**

Based on the foregoing, it is ordered that defendant's motion for judgment (#30) be granted; and that plaintiff's action be dismissed and judgment entered accordingly.

DATED this 2 day of April, 2010.

MARK D. CLARKE
UNITED STATES MAGISTRATE JUDGE